UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHUCK WILLIAM BACON,

                 Petitioner,                          Case No. 2:13-cv-10016

v.                                         Honorable Patrick J. Duggan

PAUL KLEE,

                 Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY**

Petitioner Chuck William Bacon ("Petitioner"), a Michigan Department of
Corrections prisoner currently confined at the Gus Harrison Correctional Facility in
Adrian, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §
2254, asserting that he is being held in violation of his constitutional rights.  In his
application, filed through attorney Craig A. Daly, Petitioner challenges his convictions
for second-degree murder, Michigan Compiled Laws § 750.317, assault with intent
to commit murder, Michigan Compiled Laws § 750.83, felon in possession of a
firearm, Michigan Compiled Laws § 750.224f, and possession of a firearm during the
commission of a felony, Michigan Compiled Laws § 750.227b on several bases, each
of which implicates his right to a fair trial.  The trial court sentenced Petitioner as a

1

fourth habitual offender, Michigan Compiled Laws § 769.12, to concurrent terms of sixty to ninety years on the second-degree murder and assault with intent to commit murder convictions, three to five years on the felon in possession of a firearm, to be served concurrently with the sixty to ninety year term, and to a mandatory two-year consecutive term on the felony firearm conviction.[1]  For the reasons that follow, the Court will deny the petition and will also decline to issue a certificate of appealability.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Following a seven-day trial in the Third Judicial Circuit Court for the County of Wayne, located in Detroit, Michigan, Petitioner was pronounced guilty of the aforementioned offenses by a jury of his peers.  The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).[2]  *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010) (noting that this statutory presumption applies to

---

[1]  The trial judge indicated that Petitioner's sentence on the felony firearm charge would be credited by his 199 days of time-served.

[2]  Title 28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

2

factual findings made by state appellate courts on the basis of their review of the trial

court's records) (citation omitted).

> This case arose out of a neighborhood shooting.  On the night of April 9, 2006, Cardaro Larkins, Darrieus Spikes, and James Singleton were near Singleton's house on James Street "chilling and rapping."  Larkins was leaving for the military the next day.  Around 11:30 p.m., Chuck Bacon, Sr., defendant's father and an acquaintance of the Larkins family, drove up and invited Larkins, Spikes, and Singleton to a warehouse he owned, which was used as a recording studio and after-hours club.  The boys accompanied defendant's father, who let them into the studio and drove off.  By 12:20 or 12:30 a.m., on April 10, 2006, the boys realized defendant's father had left and decided to steal some recording equipment from the studio.  After leaving with some items, Larkins and Spikes returned to the studio to lock the studio gate and close the front door.  Singleton, however, returned home.

> After Larkins and Spikes returned to the studio, a Ford Crown Victoria pulled up and defendant got out of the car to go inside the studio. Defendant claimed that he had just returned from performing a rap session at a club and had returned to the studio to clean up.  Defendant noticed that the studio gate and doors were open when he arrived and that the studio had been ransacked.  As soon as defendant went into the studio, Spikes and Larkins ran away in different directions.  Spikes last saw Larkins running near Woodlawn Street.  According to Spikes, defendant followed Spikes in the Crown Victoria, got out of the car, and fired two shots at Spikes.  Spikes claimed that he was unarmed during this incident and fired no shots.  Spikes ran back to his neighborhood where he had agreed to meet Larkins, but Larkins did not arrive.  Around 1:00 a.m., police found Larkins lying on his back in a field near Woodlawn Street.  Larkins had been fatally shot in the forehead.  The next morning, Spikes provided police with one of defendant's rap videos he had taken from the studio.

> In contrast to this version of events, defendant claimed that after leaving the studio, he followed Larkins and the two got into a fistfight before Larkins ran away from him and toward a field.  At this point, Spikes

3

approached and fired four shots at defendant.  Defendant retrieved a
"thirty-eight," returned fire, and drove away.  Defendant then picked up
Lateece Turner and Indea Knox and brought them back to the studio for
sex around 2:30 a.m.  The women stayed with defendant at the studio
until 10:00 or 11:00 a.m.

Turner later provided a statement to police in which she indicated that
defendant informed her that before picking her up, he shot at someone
who was stealing equipment from the studio.  Although Turner affirmed
this statement at an investigative subpoena hearing, she testified at trial
that this version of events was not true.  Instead, Turner claimed at trial
that defendant had told her that he "tussled" with the person who broke
into the studio and then returned fire after someone shot at him.

Knox also provided a statement at an investigative subpoena hearing.
Knox indicated that defendant told her, "I had to do what I had to do,"
with regard to the break-in.  In addition, Knox testified at the
investigative subpoena hearing that she was fearful of "Chuck's family
or his boys," that "everyone know[s] [defendant] did it[,]" and that "it
was out that [Knox and Turner] were with [defendant] during the
shooting."  At trial, Knox denied making these statements and claimed
that she only learned from other people in the neighborhood that
someone involved in the studio break-in had been shot.

Larkins's mother, Yolanda Wilson, testified at trial that sometime after
the shooting, defendant waved a gun at her and said, "[I] can't be
touched."  Wilson drove away, but defendant allegedly followed her in
his car and tried to run her off the road.

*People v. Bacon*, No. 274242, 2008 WL 2356359, at *1-2 (Mich. Ct. App. June 10,

2008) (unpublished) (per curiam).

Following his convictions and the imposition of his sentence, Petitioner filed

an appeal of right with the Michigan Court of Appeals.  In an unpublished, per curiam

opinion issued in June of 2008, the state appellate court affirmed Petitioner's

4

convictions. Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Bacon*, 482 Mich. 1066, 757 N.W.2d 444 (2008).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.500, which the trial court denied. *People v. Bacon*, No. 06-005895-01 (3d Jud. Cir. Ct., Apr. 15, 2010). The Michigan appellate courts denied leave to appeal. *People v. Bacon*, No. 303355 (Mich. Ct. App. Oct. 6, 2011); *lv. den.* 491 Mich. 941, 815 N.W.2d 484 (2012); *reconsideration den.* 493 Mich. 922, 823 N.W.2d 564 (2012).

On February 28, 2012, while Petitioner's first post-conviction motion was pending in the state-court system, he filed a second motion for relief from judgment in the state trial court asserting a retroactive change in the law based on the Supreme Court of the United States's decision in *Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721 (2010), which held that "the Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors." *Id.* at 213, 130 S. Ct. at 724. Based on his belief that *Presley* articulated a new rule made retroactive on collateral review, Petitioner's second post-conviction motion asserted that the trial court violated Petitioner's Sixth Amendment right to a public trial, a right the court allegedly violated by excluding the public as well as Petitioner's family from the courtroom during jury selection, and that

5

his trial counsel provided constitutionally-inadequate representation by failing to object to the courtroom closure.

On January 3, 2013, soon after filing his second post-conviction motion, Petitioner, through counsel, filed his application for writ of habeas corpus, seeking habeas relief on the claims asserted in the Michigan appellate courts on direct review and those asserted in his first post-conviction motion. On May 6, 2013, Petitioner filed a motion to hold the habeas petition in abeyance while he finished exhausting his second post-conviction motion in the state courts, which this Court granted.

The state trial court denied Petitioner's second post-conviction motion for relief from judgment on January 8, 2013, just days after the habeas petition was filed. Citing Michigan Court Rule 6.502(G), which prohibits criminal defendants from filing a second or successive motion for relief from judgment unless there has been either a retroactive change in the law or newly-discovered evidence, the state trial court determined that Petitioner was not entitled to relief. The state court further reviewed the courtroom closure issue on the merits, applying the plain error standard of review applicable to forfeited constitutional errors prior to rejecting Petitioner's claim. *People v. Bacon*, No. 06-005895-01, at *2, 4 (3d Judicial Cir. Ct., Jan. 8, 2013). The Michigan Court of Appeals dismissed Petitioner's application for leave to appeal on the basis that it lacked jurisdiction, explaining that the Michigan Court Rules do not

6

provide for a right of appeal of the denial or rejection of a successive motion for relief from judgment.  *People v. Bacon*, No. 316264 (Mich. Ct. App. June 20, 2013); *lv. den.* 495 Mich. 901, 839 N.W.2d 473 (2013).

On December 20, 2013, Petitioner moved to lift the previously imposed stay and to file a supplemental habeas petition, which this Court granted.  In the original and supplemental habeas petitions, Petitioner seeks relief on the following grounds:

I. Petitioner Bacon was denied due process by police intimidation of key prosecution witnesses which resulted in them making alleged incriminating statements used by the prosecution at trial to convict petitioner.

II. Petitioner Bacon was denied due process and a fair trial when the prosecutor repeatedly argued and introduced evidence that the witnesses were afraid and concerned about their safety when there was no evidence that their fears were connected to Petitioner.

III.  Petitioner Bacon was denied due process and a fair trial by the prosecutor's introduction of a separate uncharged, alleged attack on the victim's mother after the shooting.

IV. Petitioner Bacon was denied his right to a fair trial and due process when the prosecutor elicited evidence that Petitioner, through his attorney, exercised his right to remain silent while in custody.

V. Petitioner Bacon was denied a fair trial when the prosecutor engaged in misconduct by (a) appealing to sympathy for a conviction, (b) shifting the burden of proof, (c) arguing facts not in evidence, (d) making disparaging comments about defense counsel, and (e) improperly arguing other alleged bad acts.

VI. The admission of a video displaying the Petitioner with weapons [and] "gangsta rap" and used by the prosecutor as character evidence

7

denied petitioner a fair trial.

VII. Petitioner Bacon was denied his right to effective assistance of counsel when his attorney (a) failed to request a continuance after being hired two (2) days before trial, (b) opened the door for impeachment with a prior drug conviction of the petitioner's, (c) failed to object to the prosecutor's misconduct and introduction of other alleged criminal acts by the petitioner, (d) failed to investigate and present to the jury significant inconsistencies in the testimony of Darrieus Spikes, (e) failed to investigate Lance Newman's background involving criminal activity and perjured testimony, (f) failed to request a manslaughter instruction to the jury, and (g) cumulative effect and overall deficiency.

VIII. Newly discovered evidence from an independent eyewitness established that Petitioner Bacon fired in self-defense.

IX. Petitioner Bacon was denied due process of law when the prosecution failed to disclose that the officer-in-charge, Lance Newman, who had threatened, intimidated and cajoled key prosecution witnesses, had fraudulently swindled money while overseeing a different homicide, for which he was ultimately prosecuted, convicted and sent to prison.

X. The trial court denied Petitioner Bacon his right of confrontation and a fair trial when the court excluded from evidence a HYTA disposition of the prosecution's key witness, Darrieus Spikes.

XI. Petitioner Bacon was deprived of his right to a public trial under the Sixth Amendment when the trial judge excluded the public and petitioner's family during jury selection. This constitutional error is structural constituting automatic reversal.

Following the filing of the supplemental petition, Respondent Paul Klee

("Respondent") filed an answer to the habeas petition as well as the corresponding

Rule 5 materials.[3]

## II.   STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214.  In order to grant relief, this Court must conclude that the state court's decision "with respect to any claim that was adjudicated on the merits in State court proceedings" was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Supreme Court has expounded upon the meanings of the two clauses contained in 28 U.S.C. § 2254(d)(1).  *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (O'Connor, J., opinion of the Court for Part II) ("[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning.").  "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's]

---

[3] Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, specifically subdivisions (c) and (d), set forth the respondent's obligation to submit state court materials related to the conviction and appeal challenged in a § 2254 proceeding.

cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (alterations in original) (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519).

Alternatively, "[i]f the state court identifies the correct governing legal principle . . . , habeas relief is available under the unreasonable application clause if the state court unreasonably applies that principle to the facts of the prisoner's case or unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted).  A federal court may not find a state court's application of Supreme Court precedent unreasonable if it is merely "incorrect or erroneous.  [Rather, t]he state court's application must have been 'objectively unreasonable.'" *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522.  "Rather, it is the habeas applicant's burden to show that the

10

state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

Factual determinations made by state court judges in the adjudication of claims cognizable on habeas review are accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Id.* Moreover, habeas review of claims adjudicated on the merits is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. __, 131 S. Ct. 1388, 1398 (2011).

As the authority cited above makes clear, AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (citing cases); *see also Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007).

## III.   ANALYSIS

### A.   Procedural Default

As an initial matter, Respondent contends that one or more of Petitioner's

11

claims are barred by the doctrine of procedural default.[4]  It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997)).  The Supreme Court has explained the rationale behind such a policy:  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523.  In this case, judicial economy counsels in favor of addressing many of the substantive issues, as the claims are easily disposed of and would not offend notions of comity.  Accordingly, the Court shall proceed to the merits of several of Petitioner's claims.  After completing the merits analysis, the Court will return to the claims barred by the procedural default doctrine.

---

[4]  Respondent contends that Petitioner's first through sixth claims are procedurally defaulted because counsel failed to lodge an objection at trial. Petitioner contends that trial counsel was ineffective for failing to object to these errors. (*See* Pet. Claim VII.)  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of some of Petitioner's defaulted claims, the Court addresses the merits of several of Petitioner's claims instead of engaging in a procedural default analysis. *Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

12

**B.      Claim One: Intimidation of Witnesses**

In his first claim, Petitioner first contends that the introduction of the testimony of two key prosecution witnesses - Lateece Turner and Indea Knox - violated due process and his right to a fair trial because law enforcement officials pressured and coerced them into making incriminating statements against Petitioner by, for example, threatening to take away one woman's children and threatening to send them both to jail.  Petitioner raised this claim in his direct appeal with the Michigan Court of Appeals.  The state appellate court denied the claim, concluding that the argument lacked merit under the plain error standard, which it applied because Petitioner did not object prior to or during his trial.  The state courts' denial of relief is neither contrary to established precedent of the Supreme Court nor an unreasonable application of federal law.

Under federal law, a criminal defendant does not have standing to challenge the voluntariness of a statement made by a witness to the police because the privilege against self-incrimination of the Fifth and Fourteenth Amendments is personal in nature, and does not extend to third parties called as witnesses at trial.  *United States v. Nobles*, 422 U.S. 225, 234, 95 S. Ct. 2160, 2168 (1975).  While the Sixth Circuit has indicated that the use of a witness's coerced testimony may violate a defendant's rights under the Due Process Clause of the Fourteenth Amendment, *Bradford v.*

13

*Johnson*, 476 F.2d 66 (6th Cir. 1973), the Supreme Court has not articulated such a rule, *Samuel v. Frank*, 525 F.3d 566, 569-70 (7th Cir. 2008) (admitting sexual assault victim's out-of-court statements made to police officers even though the officers told the victim she would not get her baby back if she did not cooperate); *cf. Nasrichampang v. Woodford*, 288 F. App'x 367, 368 (9th Cir. 2008) ("There is no due process violation when a witness who previously was illegally interrogated is 'subject to cross-examination at trial through which the jury could assess the witness's credibility.'" (quotation omitted). This is important because this Court may only examine the holdings of the Supreme Court as they existed at the time of the relevant state-court decision to determine whether the state court decision was contrary to, or involved an unreasonable application of, clearly-established federal law. *Mitzel v. Tate*, 267 F.3d 524, 530-531 (6th Cir. 2001). A federal district court sitting in habeas may not look to the decisions of this circuit, or to the other federal courts of appeals, when adjudicating an individual's rights pursuant to the AEDPA. In the absence of any clearly-established federal law requiring the suppression of a non-defendant witness's coerced testimony, Petitioner is not entitled to habeas relief on his claim.

Moreover, even where police conduct in obtaining a statement from a witness is inappropriate, if the conduct is "not so extreme that it violates a sense of

14

fundamental fairness, shocking to universal justice," a habeas petitioner's due process rights are not violated where the petitioner is able to cross-examine the witness regarding the circumstances surrounding the police interrogation. *Wilcox v. Ford*, 813 F.2d 1140, 1149 (11th Cir. 1987) (internal quotation omitted). The opportunity for cross examination allows the jury "adequate opportunity to assess the proper weight to be accorded to the challenged evidence." *Id.*; *see also Alexander v. Lafler*, No. 11-10286, 2013 U.S. Dist. LEXIS 87368, at *31 (E.D. Mich. June 21, 2013) (Cleland, J.) (rejecting witness intimidation claim where the only evidence of improper police coercion came from the witness's testimony and that witness testified at trial, therefore permitting the jury to assess the credibility of the claim). In the present case, Ms. Turner and Ms. Knox were questioned extensively concerning the circumstances surrounding their interrogation by the police:

> At trial, Turner and Knox claimed that they had previously provided statements to the police linking defendant to the murder because the police intimidated them. Specifically, Turner testified at trial that the police told her that her statement was not good enough and threatened to take away her children and send her to jail. Similarly, Knox testified that the police threatened that she would go to jail if she did not provide a statement incriminating defendant. However, although Turner testified at trial that her testimony at the investigative subpoena hearing was not true, she then contradicted herself and admitted at trial that she was truthful with the police even after they threatened to take away her children. Similarly, Knox admitted that she had testified under oath at the investigative subpoena hearing that her statement to the police was the truth.

*People v. Bacon*, No. 274242, 2008 WL 2356359, at *2.

Before moving on to the next claim, the Court notes that Petitioner relies on *Webb v. Texas*, 409 U.S. 95, 93 S. Ct. 351 (1972) (per curiam) as support for his claimed entitlement to habeas relief. However, *Webb* is inapposite, as in that case, a trial court judge gave a strongly-worded admonishment to a witness in a criminal case. The witness, who had appeared in the criminal court to testify on behalf of the defendant, was serving a jail sentence. After "the judge's lengthy and intimidating warning," which included repeated warnings about criminal punishment for perjury, the witness refused to testify for the defendant, invoking his Fifth Amendment privilege against self incrimination. *Id.* at 97, 93 S. Ct. at 353. In this case, the neither witness refused to take the stand, and neither was called by the defense. This distinction is important, as the *Webb* Court noted that its precedent established that:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . . Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

*Id.* at 98, 93 S. Ct. at 353 (quoting *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967)).

In sum, there is no clearly-established Supreme Court law requiring the suppression of a non-defendant witness's coerced statement to law enforcement

16

officials.  Moreover, the cross-examination of Turner and Knox provided the jury with the opportunity to assess the credibility and reliability of their statements.  This Court concludes that under the circumstances, it was not unreasonable for the Michigan Court of Appeals to reject petitioner's first claim.

**C.      Claims Two, Three, and Six: Evidentiary Law Claims**

In his second, third, and sixth claims, Petitioner alleges that he was denied a fair trial by the admission of prejudicial and irrelevant evidence.  In his second claim, Petitioner alleges that the prosecution introduced irrelevant evidence that two prosecution witnesses were afraid for their personal safety despite a lack of evidence connecting their fear to Petitioner.  Somewhat similarly, in his third claim, Petitioner contends that the prosecution introduced irrelevant and prejudicial evidence of uncharged conduct, namely, that he had threatened the victim's mother with a gun before attempting to run her off the road with his car.  In his sixth claim, Petitioner claims that he was denied a fair trial by the introduction of a "gangsta rap" video recording showing Petitioner waving a semi-automatic weapon. The Michigan Court of Appeals rejected each of these arguments on direct review.

The state courts' denial of relief is neither contrary to Supreme Court precedent nor did it involve an unreasonable application of federal law.  It is well-established that violations of state law or procedure that do not infringe specific federal

constitutional protections are not cognizable claims on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."). Thus, "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence[,]" are not typically cognizable on federal habeas review. *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).

Petitioner's claims that he was denied a fair trial by the admission of irrelevant and prejudicial evidence, including propensity evidence in the form of other "bad acts," cannot form the basis for habeas relief because they involve state law evidentiary issues and there is no clearly-established Supreme Court precedent holding that a state violates a criminal defendant's due process rights by admitting propensity evidence. *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his second, third, and sixth claims.

**D.  Claims Four and Five: Prosecutorial Misconduct**

In his fourth and fifth claims, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v.*

18

*Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S. Ct. 1868, 1872 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (internal quotation omitted).

In his fourth claim, Petitioner argues that the prosecutor elicited testimony from a detective that Petitioner had exercised his right to remain silent. The Michigan Court of Appeals rejected this claim on direct review:

> Here, although the prosecutor elicited testimony from a police officer that defendant's attorney indicated after defendant's arrest that defendant would not provide a statement, defendant had previously testified that after his arrest, no police officer asked him what transpired the night of the incident even though he was in jail for eight days and he had allegedly acted in self-defense. Defendant's testimony arguably created the impression that he was unable to tell his version of events to police after his arrest. As such, defendant has failed to establish that the admission of evidence concerning his post-arrest silence constituted plain error.

*People v. Bacon*, No. 274242, 2008 WL 2356359, at *5.

It is a violation of the Due Process Cclause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence after he or she has been given *Miranda* warnings to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976). However, in certain cases, a defendant might open the door for post-arrest silence to be introduced as evidence by the prosecution:

> It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.

*Id.* at 619 n.11, 96 S. Ct. at 2245 n.11 (internal citation omitted) (citing *United States v. Fairchild*, 505 F.2d 1378, 1383 (5th Cir. 1975)). The prohibition against reference to post-arrest silence does not allow the defendant to "freely and falsely create the impression that he has cooperated with police when, in fact, he has not." *Earnest v. Dorsey*, 87 F. 3d 1123, 1135 (10th Cir. 1996) (quoting *Fairchild*, 505 F.2d at 1383). Reference to post-arrest silence is permissible for rebuttal purposes when a defendant implies that he cooperated with the police or implies that he gave the police an exculpatory statement. *Id.* For example, in *United States v. Maverick*, 601 F.2d 921 (7th Cir. 1979), the court held that the prosecutor's references to the defendant's

20

post-*Miranda* silence was permissible to rebut the defendant's assertion on direct-examination that he was not given an opportunity to explain his story to the authorities and was told by the police to "shut up" and "they don't want to hear it." *Id.* at 932-33. The Seventh Circuit reasoned that the prosecution acted properly in discrediting the defendant by showing that the defendant was given an opportunity to explain his conduct but that he did not take advantage of the opportunity. *Id.* at 933; *see also United States v. Butler*, 924 F.2d 1124, 1129 (D.C. Cir. 1991) (prosecutor's references to Butler's post-*Miranda* silence deemed permissible because of Butler's claim on direct-examination that he never had an opportunity to explain his circumstances to law enforcement officials).

During his trial, Petitioner testified that after being arrested, no police officer inquired as to what had transpired the night of the shooting even though Petitioner was incarcerated for eight days and maintained that he was acting in self-defense. By testifying as he did, Petitioner gave the impression that he was unable to tell his side of the story and to explain that he was acting in self-defense. References to his post-arrest silence were accordingly permissible as rebuttal testimony. Petitioner is not entitled to habeas relief on this claim.

Petitioner's fifth claim contains several sub-claims. He first claims that the prosecutor committed misconduct by appealing to the jury's sympathy by noting that

the murder victim was supposed to join the Air Force to serve his country honorably but that his ended the night before he was supposed to report for duty.  Petitioner is not entitled to habeas relief on this claim.

First, the prosecutor's comment, even if it was an attempt to invoke sympathy from jurors, would not entitle Petitioner to habeas relief because the remark was isolated to the portion of the closing argument focused on summarizing the evidence and did not render the trial fundamentally unfair.  *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000). Further, any potential prejudice to Petitioner was mitigated by the fact that the trial court instructed the jurors about the elements of the crimes and the burden of proof, directed them not to let sympathy or prejudice influence their decision, and explained that the attorneys' questions and arguments are not evidence. (10/5/06 Trial Tr. 110.)  Jurors are presumed to follow the trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799, 121 S. Ct. 1910, 1922 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987)); *United States v. Powell*, 469 U.S. 57, 66, 105 S. Ct. 471, 477 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."); *Cockream v. Jones*, 382 F. App'x 479, 486 (6th Cir. 2010).  Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

Petitioner next contends that the prosecutor improperly shifted the burden of the proof to Petitioner by arguing, over objection, that Petitioner's previous attorney failed to ask any questions about self-defense during his preliminary examination. This claim does not warrant habeas relief. The trial court instructed the jury that Petitioner was presumed innocent, that the prosecutor had the burden of proving Petitioner's guilt beyond a reasonable doubt, and that a criminal defendant is not required to prove his innocence. (10/5/06 Trial Tr. 111.) In the present case, the prosecution's argument did not deprive Petitioner of a fair trial, because any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002).

Petitioner next claims that the prosecutor made misleading statements in her opening remarks concerning the evidence. The Michigan Court of Appeals rejected this claim, stating:

> [D]efendant argues that the evidence did not support portions of the prosecutor's opening statement and closing arguments. First, defendant claims that the prosecutor's reference during her opening statement to Spikes receiving "external pressure" was improper because Spikes did not testify about receiving any threats. This claim fails. "The purpose of an opening statement is to tell the jury what the advocate proposes to show." *People v. Moss*, 70 Mich.App. 18, 32, 245 N.W.2d 389 (1976); see also MCR 6.414(C). A prosecutor's statement during opening arguments that something will be proved, but which is not later proved, is not a basis for reversal if the statement was made in good faith.

23

*People v. Joshua*, 32 Mich.App. 581, 586, 189 N.W.2d 105 (1971). During opening arguments, the prosecutor indicated that some witnesses, including Spikes, might testify inconsistently with previous statements they had provided due to "external threats." In light of Knox's statements regarding her safety concerns, the prosecutor was on firm ground in making this claim with respect to Spikes, who was involved in the altercation and lived in the same neighborhood as defendant's father. Regardless, any prejudice was cured by the trial court's instruction that the attorneys' statements and arguments were not evidence. Thus, defendant has failed to show plain error affecting his substantial rights.

Also, defendant contends that the prosecutor's comment during opening arguments that Larkins was shot with in the back of the head was misleading. Although this comment was incorrect, defendant has not put forth evidence that the comment was made in bad faith. Moreover, he has not shown that the jury was misled or that the statement was outcome-determinative, given that the medical examiner explained during direct examination by the prosecutor that the bullet entered Larkins's forehead. Thus, this claim fails.

*People v. Bacon*, No. 274242, 2008 WL 2356359, at *7.

Not every variance between the advanced description of the prosecutor in the opening statement of the summary of the testimony that he or she expects to introduce and the actual presentation constitutes reversible error, when a proper limiting instruction is given. *Frazier v. Cupp*, 394 U.S. 731, 736, 89 S. Ct. 1420, 1423 (1969). In the present case, the trial court instructed the jurors at the beginning and the end of trial that the lawyers' arguments and statements were not evidence. (9/27/06 Trial Tr. 7; 10/5/06 Trial Tr. 112.) A jury is presumed to have followed a trial court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S. Ct. 727, 733

24

(2000).  In this case, any variance between the prosecutor's opening statement and the evidence introduced at trial did not prejudice Petitioner, in light of the trial court's limiting instruction to the jury.  *United States v. Campbell*, 317 F.3d 597, 606-07 (6th Cir. 2003) (prosecutor's opening statement in narcotics prosecution, which referred to expected testimony of witness who subsequently did not testify at trial, did not prejudice defendants, where jury was instructed that statements of attorneys were not evidence, and there was no indication that the jury was unable to follow the court's instructions).

Petitioner further claims that the prosecutor misled the jury in her closing argument by indicating that Petitioner knocked the victim down with his car. Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quotation omitted).  Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any facts that have not been introduced into evidence and which are prejudicial. *Byrd*, 209 F.3d at 535.  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

Petitioner testified at trial that he almost knocked the victim down with his car, thus, the prosecutor's remarks were not that misleading.  In any event, any

25

prosecutorial misconduct in attempting to inject facts that had not been introduced

into evidence was ameliorated by the trial court's instruction that the lawyers'

comments and statements were not evidence. *Hamblin v. Mitchell*, 354 F. 3d 482,

495 (6th Cir. 2003).

Petitioner also claims that the prosecutor disparaged defense counsel in her

closing argument with the following remarks:

> You heard Mr. Bacon's rap on that video. Now, you heard Counsel's
> rap, and I'll submit to you that Counsel is a better game spinner than his
> own client as far as the facts in this case, ladies and gentlemen and what
> you heard from that witness stand.

(10/05/06 Trial Tr. 94.) On direct review, the Michigan Court of Appeals rejected

this claim, explaining:

> The prosecutor's comment did not denigrate defense counsel. Rather,
> in context, the prosecutor's reference to defense counsel as a "game
> spinner" was a play on words comparing defense counsel to defendant,
> who was a neighborhood rap artist, and part of the prosecutor's rebuttal
> that the evidence did not support defense counsel's argument that
> defendant acted in self-defense. Therefore, defendant has failed to show
> a plain error that affected his substantial rights.

*People v. Bacon*, No. 274242, 2008 WL 2356359, at *8.

It is improper for an attorney to make "unfounded and inflammatory attacks"

on opposing counsel. *United States v. Young*, 470 U.S. 1, 9, 105 S. Ct. 1038, 1043

(1985). However, any remarks must be viewed within the context in which they

arose. *United States v. Catlett*, 97 F.3d 565, 572 (D.C. Cir. 1996). Further, the Sixth

Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee*, 231 F. App'x 469, 480 (6th Cir. 2007) (quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992)). Thus, a prosecutor's comment during closing argument that the defense was attempting to trick the jury does not constitute improper disparagement of defense counsel. *Id.*

Petitioner is not entitled to habeas relief on his claim that the prosecutor improperly denigrated defense counsel, because even if the prosecutor's comments about Petitioner's defense were improper, they were not flagrant enough to justify habeas relief. *Henley v. Cason*, 154 F. App'x 445, 447 (6th Cir. 2005). The remarks were brief and fairly isolated and were part of a larger argument that focused on the evidence in the case. (10/05/06 Trial Tr. 38-64, 94-109). Further, the trial court instructed the jury both before the opening arguments and after closing arguments that the lawyers' arguments were not evidence. When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's isolated comments did not render the entire trial fundamentally unfair. *Byrd*, 209 F.3d at 533.

In yet another component of his fifth claim, Petitioner claims that the

prosecutor introduced prejudicial and inadmissible evidence that Petitioner was involved in other criminal activity. This Court already rejected Petitioner's second, third, and sixth claims which raised the same allegations. Although Petitioner reframes this claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Because the trial judge permitted the introduction of this evidence, Petitioner is not entitled to relief on his claim.

Petitioner lastly contends that the cumulative effect of the prosecutor's comments and questions deprived him of a fair trial. The Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Petitioner's claim that the prosecutor's comments and remarks cumulatively deprived him of a fair trial is an inadequate ground for granting federal habeas relief, because it is a cumulative errors claim.

### E.    Claim Seven: Ineffective Assistance of Trial Counsel

In his seventh claim, Petitioner raises several ineffective assistance of trial

28

counsel claims.

In order to establish ineffective assistance of counsel, a habeas petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690, 104 S. Ct. at 2066. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689, 104 S. Ct. at 2065. As to the issue of prejudice, counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. A petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 102 S. Ct. at 2068. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state

appellate courts reviewing their performance. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

In his first ineffective-assistance claim, Petitioner asserts that he was denied the effective assistance of counsel at trial because his attorney failed to request a continuance despite having been retained by Petitioner a mere few days prior to trial. The Michigan Court of Appeals denied relief on this claim stating:

> In any event, it was clear that defense counsel was well prepared to try this case, given his vigorous cross-examination of the prosecutor's witnesses, presentation of defendant's case, and arguments on behalf of defendant. Thus, the failure to request an adjournment did not prejudice defendant, and any request would have been futile.

*People v. Bacon*, No. 274242, 2008 WL 2356359, at *10.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner does not explain how trial counsel was unprepared or how additional preparation time would have aided Petitioner's case. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Workman v. Bell*, 178

F.3d 759, 771 (6th Cir. 1998).  Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or to conduct a minimal investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *Martin v. Mitchell*, 280 F.3d 594, 607-08 (6th Cir. 2002).  Petitioner thus cannot show that counsel was ineffective for failing to request a continuance.

Petitioner next contends that trial counsel was ineffective for opening the door to Petitioner being impeached by the prosecutor with a 2002 conviction for attempted delivery of less than fifty grams of marijuana.  After Petitioner's rap video was shown to the jury, defense counsel asked Petitioner, "Are you a dope dealer, a drug dealer?"  Petitioner denied that he was a drug dealer and claimed that his persona on the video was just an image.  On cross-examination, the prosecutor asked Petitioner about the 2002 conviction.

The Michigan Court of Appeals rejected Petitioner's claim on direct review, concluding:

> It was defendant himself who, contrary to counsel's advice, requested that the jury hear the audio portion of the video in which he described himself as a drug dealer.  In light of the potential prejudice that could result, it was sound trial strategy for defense counsel to raise the issue that defendant was not a drug dealer currently and that the video was merely an image.  Further, given the form of defense counsel's question—"Are you a dope dealer, a drug dealer?"—it is clear counsel attempted to confine this issue to the time of trial.  Indeed, counsel made

this argument in his objection to evidence of defendant's prior conviction. Although the trial court apparently disagreed, we cannot second-guess counsel's strategy with the benefit of hindsight. Moreover, evidence of defendant's prior conviction was but one issue testing defendant's credibility. Indeed, the testimony of Turner, Knox, and Wilson showed that defendant's behavior after the shooting was inconsistent with defendant's claim of self defense. Thus, counsel's performance in this matter was not outcome-determinative.

*People v. Bacon*, No. 274242, 2008 WL 2356359, at *11 (internal citation omitted).

The state appellate court did not apply law that was contrary to established Supreme Court precedent, nor did it unreasonably apply clearly-established federal law in denying Petitioner's claim. Any deficiency by counsel in opening the door concerning the details of Petitioner's 2002 attempted delivery of marijuana conviction did not prejudice Petitioner so as to support an ineffective assistance of counsel claim, in light of the fact that this evidence was not evidence of Petitioner's guilt to the charged offense. *Bridges v. Cason*, 198 F. App'x 491, 494-95 (6th Cir. 2006); *Salem v. Yukins*, 414 F. Supp. 2d 687, 699 (E.D. Mich. 2006) (defense counsel's opening the door to questions regarding the habeas petitioner's prior drug conviction did not prejudice petitioner, in light of the overwhelming evidence of her guilt). Rather, the conviction was used only to undermine Petitioner's credibility. "*Strickland* acknowledges that conclusions supported by other properly admitted evidence may be unaffected by the introduction of evidence that, although improperly admitted, is cumulative." *Bridges*, 198 F. App'x at 495. In light of the additional

32

evidence refuting Petitioner's self-defense claim, he was not prejudiced by the fact that counsel opened the door to his 2002 conviction.

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges in his prior claims.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Because the Court previously determined that the prosecutor's comments or arguments did not deprive Petitioner of a fundamentally fair trial, he is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner's remaining ineffective assistance of trial counsel claims will be consolidated and discussed with the other procedurally-defaulted claims below.

**F.  The Procedurally-Defaulted Claims**

Respondent contends that subsections (d) through (g) of Petitioner's seventh claim and his eighth through tenth claims are procedurally defaulted because he raised them only for the first time in his post-conviction motion for relief from

judgment and failed to show cause and prejudice, as required by Michigan Court Rule 6.508(D)(3), for failing to raise these claims on direct review.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51, 111 S. Ct. 2546, 2565 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 2666 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80, 106 S. Ct. 2639, 2641 (1986). However, to be credible, such a claim of innocence requires a habeas petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 866 (1995).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a criminal defendant if the motion for relief from judgment alleges grounds for relief

which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038; 1043 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, a federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal from his first motion for relief from judgment on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did

not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

In the present case, the state trial judge, in denying Petitioner's first post-conviction motion, invoked Michigan Court Rule 6.508(D)(3)(b) and concluded that Petitioner had failed to show actual prejudice and was thus not entitled to post-conviction relief. In other words, the trial court clearly and expressly relied on Petitioner's failure to comply with the cause and prejudice requirements contained in the pertinent court rule. This is sufficient to render Petitioner's post-conviction claims non-cognizable under the doctrine of procedural default. *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). The fact that the trial court judge may have also discussed the merits of Petitioner's claims in addition to invoking the provisions of Michigan Court Rule 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. *Alvarez v. Straub*, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach

36

the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

Petitioner does not offer any arguments as to why he did not present these claims on his direct appeal. Because he has not demonstrated cause to excuse the procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith*, 477 U.S. at 533, 106 S. Ct. at 2666. Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. Although Petitioner claims he now has an affidavit from Kevin Aaron claiming that Petitioner shot the victim in self-defense, Petitioner's claim that he acted in self-defense amounts to a claim of legal innocence, as opposed to factual innocence, and would therefore not excuse the procedural default. *See, e.g.*, *Harvey v. Jones*, 179 F. App'x 294, 298-99 (6th Cir. 2006) (collecting cases). Because Petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur by the Court's decision not to consider the procedurally-defaulted claims on the merits.[5] *Sanders v. McKee*, 276 F. Supp. 2d

---

[5] Even assuming that Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007).

691, 699 (E.D. Mich. 2003).

For these reasons, the Court concludes that the remainder of Petitioner's seventh claim and his eighth through tenth claims are procedurally defaulted.

## G.    Claim Eleven is Barred by AEDPA's One-Year Statute of Limitations

Respondent contends that Petitioner's remaining claims, which he raised for the first time in his supplemental petition for writ of habeas corpus, are barred by the one year statute of limitations contained within 28 U.S.C. § 2244(d)(1) because the amended petition was filed more than one year after Petitioner's conviction became final and the claims raised in the amended petition do not relate back to the claims raised by Petitioner in his original habeas petition.[6]

---

For the reasons stated by the Wayne County Circuit Court judge in rejecting Petitioner's first post-conviction motion and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, Petitioner has failed to show that his post-conviction claims have any merit.  In particular, the reasons justifying the denial of Petitioner's procedurally defaulted claims were "ably articulated by the" state trial court, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose."  *Bason v. Yukins*, 328 F. App'x 323, 324 (6th Cir. 2009).

[6]  The Court recognizes that it granted Petitioner permission to file the supplemental habeas petition.  This does not preclude Respondent from raising a statute of limitations defense to these claims.  A statute of limitations defense to a habeas petition is not "jurisdictional," thus, courts "are under no obligation to raise the time bar *sua sponte*."  *Day v. McDonough*, 547 U.S. 198, 205, 126 S. Ct. 1675, 1681 (2006).  The Court granted Petitioner permission to amend his habeas petition without making any determination as to the timeliness issue.  The fact that this Court granted Petitioner permission to file his amended petition does not preclude

38

Under AEDPA, a one-year statute of limitations applies to an application for

writ of habeas corpus by a person in custody pursuant to a judgment of a state court.

*Corbin v. Straub*, 156 F. Supp. 2d 833, 835 (E.D. Mich. 2001).  The one-year period

runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In the present case, the Michigan Supreme Court denied Petitioner's

---

Respondent from raising a limitations defense to the claims raised in this petition. *Quatrine v. Berghuis,* No. 2:10-cv-11603, 2014 WL 793626, at *2-3 (E.D. Mich. Feb.27, 2014); *Soule v. Palmer*, No. 08-cv-13655, 2013 WL 450980, at *1-3 (E.D. Mich. Feb. 5, 2013).  Although Respondent could have filed an opposition to Petitioner's motion to stay and abey proceedings pending exhaustion of the claims, he was not required to do so under the federal rules until he filed an answer to the supplemental petition.  *Orick v. Palmer*, No. 2:06-cv-13287, 2014 WL 4265775, at *7 n.6 (E.D. Mich. Aug. 28, 2014).

application for leave to appeal the denial of his direct appeal by the Michigan Court of Appeals on November 25, 2008. However, the one-year statute of limitations did not begin to run on that day. Where a state prisoner has sought direct review of his conviction in the state's highest court but does not file a petition for certiorari with the Supreme Court, the conviction becomes final on the date that the ninety-day period for seeking certiorari expires. *Jimenez v. Quarterman*, 555 U.S. 113, 119, 129 S. Ct. 681, 685 (2009). Petitioner's judgment therefore became final on February 23, 2009. *Thomas v. Straub*, 10 F. Supp. 2d 834, 835 (E.D. Mich. 1998). The statute of limitations began running the next day. Absent state collateral review, Petitioner would have been required to file his petition for writ of habeas corpus with this Court no later than February 24, 2010 in order for the petition to be timely filed.

Petitioner filed his first post-conviction motion for relief from judgment on October 30, 2009. Title 28 U.S.C. § 2244(d)(2) expressly provides that the time during which a properly filed application for state post-conviction relief or other collateral review is pending shall not be counted towards the period of limitations contained in the statute. *McClendon v. Sherman*, 329 F.3d 490, 493-94 (6th Cir. 2003). A post-conviction application remains pending in the state courts, for purposes of § 2244(d)(2), until it "has achieved final resolution through the state's post-conviction procedures." *Carey v. Safford*, 536 U.S. 214, 220, 122 S. Ct. 2134, 2138 (2002).

40

The tolling of AEDPA's one year statute of limitations ended in this case on December 26, 2012, when the Michigan Supreme Court denied Petitioner's motion for reconsideration from the denial of his application for leave to appeal the denial of his motion for relief from judgment. *Hudson v. Jones*, 35 F. Supp. 2d 986, 988-89 (E.D. Mich. 1999). Petitioner had one hundred and seventeen days remaining, or until April 22, 2013 to timely file his habeas petition.

Petitioner filed his original habeas petition on January 3, 2013. Petitioner did not file his motion to stay and abey the petition until May 6, 2013, fourteen days after the limitations period had elapsed on April 22, 2013. It was only in this motion to stay that petitioner for the first time raised his denial of public trial and related ineffective assistance of counsel claims. Petitioner did not file the actual supplemental petition for writ of habeas corpus in which he raised these claims until later, on December 20, 2013.

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664, 125 S. Ct. 2562, 2574 (2005). Here, however, none of Petitioner's remaining claims that he raised for the first time in his

41

amended habeas petition shares a "common core of operative facts" with the claims raised in his timely-filed original habeas petition. Accordingly, these claims are barred by the one year limitations period. *Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).

The Court recognizes that Petitioner's public trial and related ineffective assistance of counsel claims are based on *Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721 (2010), in which the Supreme Court held that a criminal defendant's Sixth Amendment right to a public trial was violated when the trial court excluded the public from the *voir dire* of prospective jurors. Although decided after Petitioner's trial, 28 U.S.C. § 2244(d)(1)(C) indicates that the one year limitations period can run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." While *Presley* was decided in 2010, "it has been well-established since at least 1984 that the closure of a courtroom during jury selection may violate a defendant's constitutional rights." *Silva v. Roden*, 951 F. Supp. 2d 222, 226 (D. Mass. 2013) (citing *Presley*). Because Petitioner's right to a public trial was recognized prior to the *Presley* decision, § 2244(d)(1)(C) would not delay the commencement of the limitations period until after the *Presley* decision was issued. *Silva*, 951 F. Supp. 2d at 226, n.4.

Further, Petitioner's second motion for relief from judgment, in which he raised his public trial and related ineffective assistance of counsel claims, would not toll the limitations period because the trial and appellate courts ruled that petitioner was prohibited under Michigan Court Rule 6.502(G) from filing a successive motion for relief from judgment unless there had been a retroactive change in the law or newly discovered evidence and that the issues raised by petitioner in his second post-conviction motion failed to come within either exception to the prohibition on filing second or successive post-conviction motions.

An application for state post-conviction relief is considered "properly filed," for purposes of triggering the tolling provisions of § 2244(d)(2) when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). Because federal courts defer to state courts on issues of state law and procedure, this Court must defer to the state courts' finding that the claims raised  by Petitioner in his second post-conviction motion did not come within one of the enumerated exceptions to the general rule that no successive post-conviction motions may be filed. *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003); *Israfil*, 276 F.3d at 771-72. A state

court's determination whether a habeas petitioner's post-conviction motion was properly filed governs whether a petitioner's post-conviction motion action tolls the statute of limitations under § 2244(d)(2). *Vroman,* 346 F.3d at 603. Indeed, the Sixth Circuit has ruled that a habeas petitioner's second motion for relief from judgment that is rejected by the state courts pursuant to Michigan Court Rule 6.502(G), as Petitioner's second post-conviction motion was, is not a properly filed application for post-conviction relief that would toll the limitations period pursuant to 28 U.S.C. § 2244(d)(2). *Williams v. Birkett*, 670 F.3d 729, 733 (6th Cir. 2012). The Sixth Circuit has also ruled that appeals from the denial of a successive motion for relief from judgment do not toll the limitations period. *Bey v. Capello*, 525 F. App'x 405, 409 (6th Cir. 2013). Petitioner's second motion for relief from judgment did not toll the limitations period.

Further, Petitioner is not entitled to equitable tolling under *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549 (2010), as he has failed to argue or show that the circumstances of his case warrant its application. *Giles v. Wolfenbarger*, 239 F. App'x 145, 147 (6th Cir. 2007). Neither he is entitled to tolling of the limitations period on the basis of a showing of actual innocence enunciated in *Schlup v. Delo*, *supra*, and reiterated in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[.]" *Id.* "[A] petitioner

44

does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868). For an actual innocence exception to be credible under *Schlup*, such a claim requires a habeas petitioner to support his or her allegations of constitutional error "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S. Ct. at 866. Petitioner's case falls outside of the actual innocence tolling exception, because he has presented no new, reliable evidence to establish that he was actually innocent of the crime charged. *Ross v. Berghuis*, 417 F.3d 552, 556 (6th Cir. 2005). Petitioner's claim that he acted in self-defense amounts to a claim of legal innocence, as opposed to factual innocence, and therefore does not toll the limitations period.

For the foregoing reasons, the claims Petitioner set forth in his supplemental habeas petition (the same claims he asserted in his second motion for relief from judgment in the state courts) are barred by the pertinent statute of limitations.

## IV.   CERTIFICATE OF APPEALABILITY

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. §

45

2253(c)(1)(A).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000)).  Where "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.  When a district court denies a habeas claim on procedural grounds, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.  *Id.*

Having conducted the requisite inquiry, the Court concludes that reasonable jurists would not debate the Court's assessment of the merits of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court

also concludes that reasonable jurists would not debate the correctness of this Court's procedural rulings. A certificate of appealability, therefore, shall not issue.

## V.   CONCLUSION AND ORDER

For the reasons stated herein, the Court concludes that Petitioner has failed to demonstrate that he is being held in violation of his constitutional rights, and that he is therefore not entitled to the issuance of the writ of habeas corpus.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED** and this action is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that a certificate of appealability **SHALL NOT ISSUE**.

Dated: October 22, 2015

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

**Copies to:**

Craig A. Daly, Esq.
Laura Moody, AAG
Bruce H. Edwards, AAG